IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEPHANIE L. OTTE, )
)
        Plaintiff, )
) CIVIL ACTION
v. )
) No. 18-2006-JWL
NANCY A. BERRYHILL, )
Acting Commissioner of Social Security, )
)
        Defendant. )
_____ )

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) residual functional capacity (RFC) assessment, specifically his consideration of Plaintiff's allegations of symptoms, the court ORDERS that the Commissioner's final decision shall be reversed and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

**I.**    **Background**

Plaintiff argues that the ALJ's RFC, both as to physical and mental impairments is unsupported by the record evidence (Pl. Brief 21-28), and that his finding that Plaintiff

can perform her past relevant work "is legally and factually flawed." Id. at 28. She seeks remand for immediate payment of benefits. Id. at 30.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence …, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, whether substantial evidence supports the decision is not simply a quantitative exercise, for evidence is not substantial

if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Remand is necessary because the court finds error in the ALJ's consideration of Plaintiff's allegations of symptoms. Therefore, RFC must be reassessed on remand and a new step four determination must be considered. The court may not provide an advisory opinion suggesting how the case must be decided on remand, and will not address Plaintiff's remaining claims of error.

## II. Discussion

Plaintiff claims the ALJ erred in according great weight to Dr. Listerman's opinion. She argues that Dr. Listerman's opinion was issued about two years before the ALJ's decision and was without the benefit of subsequent medical evidence. In her response brief, the Commissioner argued that the ALJ properly relied on Dr. Listerman's opinion, and that there was no medical opinion suggesting limitations greater than assessed by the ALJ. She recognizes that Plaintiff alleged disabling symptoms and limitations, but argues that the ALJ adequately discounted them and Plaintiff does not argue otherwise. She argues that Plaintiff alleged Ménière's symptoms are the primary factor limiting her ability to work, but that "[t]he ALJ reasonably concluded these symptoms were not as frequent or intense as she reported, and would not preclude all work." (Comm'r Br. 6). She points to the ALJ's finding that three Ménière's episodes a week is inconsistent with other evidence, and cites record evidence supporting that finding. (Comm'r Br. 6-7) (citing R. 47, 277, 281, 386, 434). She points to the ALJ's

4

finding that Plaintiff's conservative treatment with medications that helped her impairments also undermined Plaintiff's allegations of debilitating symptoms. Id. at 7.

In her Reply Brief, Plaintiff argues that variation in the reported frequency of her Ménière's symptoms does not justify discounting her allegations. (Reply 1) (quoting SSR 16-3p) ("However, inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms."). Plaintiff points to the vocational expert's (VE) testimony that if an individual left work half a day twice a month due to Ménière's symptoms, all work would be precluded. Id. at 2.

### A. The ALJ's Findings, As Relevant to the Court's Decision

At step one the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (R. 22). He found that Plaintiff's Ménière's disease is one of her severe combination of impairments, id., but that it does not meet or medically equal Listing 2.07 in the Listing of Impairments, 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 2.07 ("Disturbance of labyrinthine-vestibular function (including Ménière's disease)"). (R. 24). In his RFC assessment, the ALJ stated he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p." Id. He found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms

5

are not entirely consistent with the medical evidence and other evidence in the record for the reasons discussed below." (R. 25). He discussed Plaintiff's Ménière's disease, and her allegations and treatment for it extensively:

> The claimant is diagnosed with Meniere's disease. She complains of episodes of dizziness associated with nausea and vomiting. She also complains of hearing loss in her right ear. She indicated the dizzy spells are triggered by ringing in her right ear and stress (Ex. 1F /9-11).
>
> Although the claimant reportedly experienced dizzy spells prior to the alleged onset date, she reported she was no longer able to work in January 2014 secondary to an increased frequency and length of the attacks (Ex. lF/1-3, 9-11). She indicated she had ten episodes in the six months preceding the alleged onset date, five of which occurred in the last four weeks (Ex. 18F/13). During the relevant period, she complained of between three to five episodes a week causing her to stay in bed the rest of the day (Ex. 12E).
>
> However, in May 2015, she reported Meniere's attacks occurring on a monthly or every other monthly basis, and she testified she had only three episodes in the three months preceding the hearing (Ex. 11F). The claimant initially reported some relief with Meclizine and steroid tapers (Ex. 1F/1-3; 18F/22). She was only instructed to follow-up with her ear, nose, and throat specialist every six months, and nothing in the record indicates she has experienced injuries from falls during dizzy spells (Ex. 21F). Moreover, she was treated with benzodiazepines, including Valium and Xanax, which reportedly provided some symptom relief (Ex. 1F/9-11; 24F/8). In May 2015, she reported doing well with only one-half of a Valium, and she indicated she rarely used Xanax in February 2016 (Ex. 22F/181; 21F/5). Nothing in the record suggests she has been prescribed a hearing aid or surgery, including a labyrinthectomy or vestibular nerve section. Despite reported symptom relief with an intratympanic dexamethasone injection in early 2014, she has not undergone repeated injections (Ex. 18F/23). Therefore, the claimant's conservative treatment history is inconsistent with the intensity and frequency of the claimant's dizzy spells.
>
> The claimant testified she becomes overwhelmed with conversations in public settings. During the relevant period, the claimant underwent repeat audiograms. In early 2014, she showed only 64 percent word understanding, but after steroid treatment, her scores improved to 88

6

percent word understanding (Ex. 18F/22-23). Moreover, audiograms
showed normal hearing in her left ear other than a slight high tone loss (Ex.
18F/22). Repeat testing in 2015 and 2016 also showed between an 84
percent and 92 percent speech recognition threshold in the right ear (Ex.
12F; 21F/3). A consultative examiner noted she had no difficulty hearing
during a May 2015 examination, and she had no difficulty answering
questions during the hearing (Ex. 11F). Although the objective testing is
inconsistent with significant hearing loss, the undersigned finds the
claimant should be limited to only occasional exposure to loud noise.

In August 2014, a neurologist noted the claimant had no dystaxia with full
strength, symmetric reflexes and normal coordination (Ex. 4F/1-2). During
a March 2015 follow-up visit, however, she exhibited mild ataxia with
walking, particularly with making a quick return, and involuntary
nystagmus toward the right (Ex. 24F/8). However, she displayed normal
nerve function (Ex. 24F/8). Nonetheless, more recent physical
examinations showed a normal gait (Ex. 22F/140-141, 151-152). Thus, the
occasionally abnormal clinical signs and findings are inconsistent with the
frequency and intensity of the claimant's dizzy spells.

(R. 25-26).

The ALJ concluded his discussion regarding Plaintiff's RFC:

Finally, the claimant's primary care provider sporadically excused the
claimant from work secondary to acute illness (Ex. 22F/5-8, 44, 49-50, 56,
68, 79, 84, 106, 113; 17F/8). The undersigned gives no weight to these
reports because they were temporary restrictions and do not reflect the
claimant's functional capacity throughout the relevant period.

In sum, the above physical residual functional capacity assessment is
supported by the objective testing, including limited pulmonary function
and osteoporosis of the lumbar spine, as well as the clinical signs and
findings, including diminished breath sounds, occasionally abnormal gait,
full strength, and no difficulty performing orthopedic maneuvers. The
claimant's activities of daily living, including her ability to shop, cook
complete meals, and occasionally drive short distances, also support the
above residual functional capacity assessment.

(R. 28).

**B.** **Analysis**

As Plaintiff points out, at the end of her testimony the VE testified that if an individual left work half a day twice a month due to Ménière's symptoms, competitive employment would be precluded. (R. 50). In fact, she testified that if an individual "were to miss one to two days of work per month on an ongoing basis," no competitive employment would be available. Id. at 49. And, on closing the hearing in this case, the ALJ stated, "You know, of course, this is really a nonexertional case. And that's what I think we're talking about here." Id. Central to the question of disability, then, is whether Plaintiff would miss work one to two days a month on an ongoing basis.

Plaintiff testified that she was let go from her last work after she used all her sick leave, vacation, and FMLA (Family Medical Leave Act) leave because of her Ménière's disease. (R. 41). She testified that she continues to have these "episodes of dizziness and vertigo," "sometimes three a week," sometimes "three a day." Id. When the ALJ asked her how many times she had a Ménière's attack over the three months prior to the hearing, she testified, "This is a real guesstimate. I would say I probably had at least three, three attacks." Id. at 47. Plaintiff's attorney completed her "Disability Report – Appeal" (R. 276-77), and stated that Plaintiff was still having "minere's [sic] attacks at least 3 times weekly." Id. at 277 (Ex. 12E, p.2). It was apparently this report which caused the ALJ to find, as quoted above that Plaintiff "complained of between three to five episodes a week causing her to stay in bed the rest of the day." (R. 25) (citing Ex. 12E).

The ALJ noted Plaintiff's report that she was let go from work in January 2014 because she had ten episodes in the six months before she was let go from her job, five of

which occurred in the last four weeks. (R. 25) (citing Ex. 18F/13 (R. 434)). The record cited by the ALJ supports this assertion, and also contains four written excuses from work because of Ménière's disease provided by Plaintiff's physician in January 2014. (R. 543 (Jan. 27, 2014), 548 (Jan. 23, 2014), 549 (Jan. 16-Jan. 21, 2014), 555 (Jan. 6, 2014)). As the ALJ noted, Plaintiff reported to the consultative examiner in May 2015 that her Ménière's disease attacks occur monthly or every other month. (R. 25) (citing Ex. 11F) see (R. 386). The ALJ is correct that Plaintiff reported only three attacks in the three months before the hearing, but he did not mention that report was a "guesstimate," or that she reported she sometimes has three attacks a week, or three a day. And, the record supports the ALJ's finding that Plaintiff "initially reported some relief with Meclizine and steroid tapers." Id. After discussing all this evidence, the ALJ concluded, "the claimant's conservative treatment history is inconsistent with the intensity and frequency of the claimant's dizzy spells." Id.

However, as Plaintiff points out, SSR 16-3p explains that "inconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate. Symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time. This may explain why an individual's statements vary when describing the intensity, persistence, or functional effects of symptoms." 2016 WL 1119029, *8 (Mar. 16, 2016) (emphasis added). As the ALJ's decision reflects, Plaintiff's statements regarding the frequency (and to an extent, the intensity) of her Ménière's disease attacks have varied over time, but the Commissioner recognizes that that does not necessarily reveal a fatal inconsistency in her allegations, and, in fact such

9

variation is recognized as normal with Ménière's disease. WebMD, <u>What Is Ménière's disease?</u> ("Attacks are as brief as 20 minutes or last as long as 24 hours. You might get several in a week, or they might come months or even years apart. Afterward, you may feel tired and need to rest."). <u>Available online at</u>: <u>https://www.webmd.com/brain/what-is-meniere-disease#1</u> (last visited Oct. 23, 2018).[1]  Therefore, "inconsistencies" in Plaintiff's reports of symptoms alone do not justify disregarding those reports. The ALJ must explain specifically why he found that Plaintiff's Ménière's disease attacks will not cause her to miss work one to two days a month on an ongoing basis and are therefore not disabling. He has not done so, and he may not simply disregard Plaintiff's allegations because there are other inconsistencies with the evidence.

While a negative credibility determination in a court of law would justify the fact-finder rejecting any (or all) testimony of the incredible witness, the Commissioner has specifically disclaimed the consideration of a claimant's allegations as "an examination of an individual's character," so more is required in a Social Security disability case. SSR 16-3p, 2016 WL 1119029, *1 (Mar. 16, 2016) ("we are eliminating the use of the term "credibility" from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character."). Moreover, the fact the record suggests that Plaintiff's attacks

---

[1] If the link does not produce the desired page, go to www.webmd.com, search for "meniere's disease," select the article entitled "Meniere's Disease," which will produce the "Meniere's Disease Directory," and select "What is Meniere's Disease?" in the "Medical Reference" section of the page.

have already caused her to lose a job she held for over twenty years is another factor that must be addressed in the ALJ's analysis of the consequences of her Ménière's disease.

### C.     Remand for Immediate Payment of Benefits

Plaintiff "requests the [c]ourt reverse the final decision of the Commissioner with directions to grant her claims for SSA disability benefits," or alternatively to remand for a proper determination. (Pl. Br. 30). However, Plaintiff's only rationale for immediate award of benefits is that "the ALJ committed multiple factual and legal errors, [and] the [d]ecision cannot stand." This is woefully inadequate to justify the court deciding the issue of disability and directing the Social Security Administration to award benefits. Plaintiff has waived consideration of this issue by failing to develop any argument regarding it. Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be reversed and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated October 23, 2018, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**
